UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE REFERRAL
OF GREGORY M. HAYNES TO THE
STANDING COMMITTEE OF THE
UNITED STATES DISTRICT COURT

_____/

No. C 10-4642 PJH

**ORDER DENYING RULE 56(d) MOTION;
ORDER SPECIFYING PROCEDURES
AND ISSUES FOR DETERMINATION**

Before the court is the motion of respondent Gregory M. Haynes pursuant to Federal
Rule of Civil Procedure 56(d) requesting additional time to conduct discovery in order to
oppose summary judgment. Because respondent has not met the Rule 56(d) standard, the
motion is DENIED. In addition, the court finds that much of the proposed discovery is
unnecessary because it is directed at issues that are not reasonably disputed, or that it
seeks information that is not relevant to the present matter.

The court will first discuss the background of this matter, and will then identify the
issues that are to be determined in this proceeding. If, after this order has been issued,
respondent still believes he requires discovery to oppose the Committee's motion, he may
file another Rule 56(d) motion, which must comply with the requirements set forth in the
rules.

**BACKGROUND**

Respondent Gregory M. Haynes is an attorney admitted to practice in the United
States District Court for the Northern District of California. On February 18, 2010, Joanne
Hoeper, Chief Trial Attorney for the Office of the City Attorney of San Francisco, wrote a
letter to the Hon. Vaughn R. Walker, then-Chief Judge of the United States District Court
for the Northern District of California, and to the Office of the Chief Trial Counsel at the
State Bar of California.

In the letter, Ms. Hoeper asserted that Mr. Haynes had committed violations of the

**United States District Court**
For the Northern District of California

1   Rules of Professional Conduct, which raised "substantial questions as to [his] honesty,

2   trustworthiness or fitness as a lawyer in other respects" within the meaning of A.B.A. Model

3   Rule of Professional Conduct 8.3.  Ms. Hoeper cited to specific incidents that had occurred

4   in matters in which Mr. Haynes had served as opposing counsel adverse to the City and

5   County of San Francisco.

6         Based on these allegations of unprofessional conduct, Judge Walker referred the

7   matter to the Standing Committee on Professional Conduct for the United States District

8   Court for the Northern District of California ("the Standing Committee" or "the Committee").

9   In response to the referral, the Standing Committee undertook to investigate the

10  circumstances set forth in Ms. Hoeper's letter, as well as gathering other information

11  regarding Mr. Haynes.  The Committee twice requested an interview with Mr. Haynes, but

12  asserts that he rejected each request.

13        On October 4, 2010, following a quorum vote, the Committee initiated this matter by

14  filing a petition seeking an order removing Mr. Haynes from the bar of the Northern District.

15  The Committee contends that Mr. Haynes has violated his duties to his clients and to the

16  court, and has demonstrated disregard for the court's disciplinary process.

17        The petition is principally based on events that occurred in connection with two

18  cases pending before the Northern District – Cotterill v. City and County of San Francisco,

19  No. C-08-2295 JSW; and Landry v. City and County of San Francisco, No. C-08-3791 SC.

20  In addition, the Committee asserts that events in other cases are relevant to the charge

21  because they indicate a pattern of misconduct.

22        1.   The Cotterill case

23        In 2008, Cheryl Cotterill retained Mr. Haynes to represent her in connection with

24  claims arising from her involuntary confinement for ten days at San Francisco General

25  Hospital in 2006.  On her behalf, Mr. Haynes filed a complaint in the Superior Court of

26  California, County of San Francisco, in April 2008.  Shortly thereafter, the case was

27  removed to this court.  The complaint asserted federal civil rights and common law tort

28  claims against a variety of defendants, including the City and County of San Francisco ("the

2

City"), the Mayor and Chief of Police of San Francisco, the Regents of the University of California ("the Regents"), and various individuals employed at San Francisco General Hospital.

Counsel for the Regents, R. Wesley Pratt, asserts that while he was attempting to fulfill his meet-and-confer responsibilities prior to the initial case management conference, Mr. Haynes refused to cooperate, and also responded to Mr. Pratt's e-mails with profanity and unprofessional comments. For example, Mr. Haynes wrote in an e-mail to Mr. Pratt accusing him of having "bitched repeatedly about receiving e-mail," and telling Mr. Pratt to "read your fucking e-mail." When Mr. Pratt responded in a professional manner, Mr. Haynes replied, "Fuck you. I got no respect for you because you are a lying bitch."

After Mr. Pratt reported this conduct and other uncivil behavior to the court, the Hon. Jeffrey S. White issued an order to show cause why Mr. Haynes should not be sanctioned for failure to meet and confer in good faith. Mr. Haynes responded with a declaration asserting that he had always met and conferred in good faith, and that many of Mr. Pratt's allegations were false or incomplete. At the case management conference, Judge White admonished counsel regarding appropriate conduct towards each other, and declined to impose sanctions at that time.

The Regent defendants and some of the City defendants were dismissed from the action on the pleadings. Thereafter, the remaining City defendants filed a motion for summary judgment. On August 17, 2009, the court set a briefing schedule, directing that the opposition be filed August 31, 2009, and that the reply be filed on September 8, 2009. On August 27, 2009, the court issued an order continuing the hearing, but noting that the briefing schedule set by the court's previous order would remain in place. Nevertheless, Mr. Haynes failed to file the opposition brief by the August 31, 2009 due date. Instead, he filed a stipulation purporting to change the opposition due date to September 4, 2009, and the reply date to September 18, 2009, and also purporting to allow the plaintiff to file a motion for summary judgment on September 8, 2009. Judge White did not sign the proposed order.

**United States District Court**
For the Northern District of California

On September 21, 2009, the City defendants filed a notice of lack of opposition filed, and a request for entry of summary judgment in their favor.  Still no opposition was filed. On September 24, 2009, Judge White issued an order to show cause why the action should not be dismissed for failure to prosecute.  The order required a response by September 29, 2009.  Mr. Haynes filed a response on September 30, 2009, setting forth various reasons that he believed justified his failure to file a timely opposition to the City defendants' motion. Primarily, Mr. Haynes asserted that he had "made a miscalculation as to the amount of time" that would be required, and that he had also been taking medication that made concentration difficult.  Also on September 30, 2010, Mr. Haynes filed an opposition to the City defendants' motion for summary judgment.

On October 20, 2009, the City defendants filed a case management statement, noting that they had attempted to meet and confer with Mr. Haynes regarding the preparation of a joint statement, but that Mr. Haynes had failed to respond.

Also on October 20, 2009, Judge White issued an order granting the City defendants' motion for summary judgment.  In the order, Judge White stated that he found Mr. Haynes' conduct throughout the prosecution of the case to have been "reprehensible." He also noted that Mr. Haynes had been sanctioned for discovery abuses; that he had been repeatedly late in filing his submissions, including the opposition to the summary judgment motion, which had been filed "inexcusably late," and only after an order to show cause had been entered.  Further, he found that Mr. Haynes' conduct and submissions had been "consistently dilatory, rambling, and legally deficient."  A final judgment was issued on October 21, 2009.

Both the Regents defendants and the City defendants submitted bills of costs, seeking more than $90,000 in costs.  Both the Regents defendants and the City defendants also filed motions for attorneys' fees and expert costs, and sanctions, pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927, seeking a total of more than $400,000 against both Mr. Haynes and Ms. Cotterill.  Judge White referred these motions to Magistrate Judge James Larson.

1       Mr. Haynes did not promptly inform Ms. Cotterill of the court's summary judgment

2   ruling.  According to Ms. Cotterill, she did not obtain that information from Mr. Haynes at all,

3   but rather while she was reviewing the docket on PACER.  She sent an e-mail to Mr.

4   Haynes on November 13, 2009, stating that she was "surprised" he had not contacted her

5   to discuss the ruling, and further emphatically stating that she "[did] not want to appeal the

6   case" and "[did] not want to pursue any other action other than to defend against the

7   motions for attorneys' fees and costs."

8       Mr. Haynes responded to Ms. Cotterill's e-mail that same day, stating that the

9   reason he had delayed in advising her of the summary judgment ruling was that he

10  "needed time to review the opinion and digest it."  He also stated that he understood that

11  she "[did] not want to appeal the matter;" but added that "since there are appealable issues

12  which you should prevail upon, by appealing you have the leveage [sic] to agree to dismiss

13  the appeal in exchange for the dismissal of the claim for costs and attonrey [sic] fees."

14      Four days later, on November 17, 2009, Mr. Haynes wrote Ms. Cotterill an e-mail

15  advising her that counsel for the City defendants had indicated that the City would be

16  willing to negotiate the issue of fees and costs, if they could obtain a waiver of appeal, and

17  suggesting that the Regents might also be willing to negotiate the fees and costs in return

18  for a waiver of appeal.  He also noted that the last day to file a notice of appeal would be

19  November 19, 2009, and strongly urged Ms. Cotterill to file a notice of appeal so she could

20  preserve her rights with regard to negotiating the fees and costs.

21      The following day, November 18, 2009, Mr. Haynes sent another e-mail to Ms.

22  Cotterill, asking her to call him regarding the notice of appeal.  He stated, "The failure to file

23  a notice of appeal may cost you a substantial sum due to not being able to negotiate [sic]

24  the cost and attorney fees, if any is awarded."  Ms. Cotterill responded that same day with a

25  one-sentence e-mail, "For the second time, I do not want to file an appeal."  On November

26  19, 2009, without authorization from Ms. Cotterill, Mr. Haynes filed a notice of appeal.

27      On November 25, 2009, Ms. Cotterill wrote Mr. Haynes, asking that he confirm that

28  he "did NOT file a notice of appeal[,]" and adding that in her view, "it would be a

United States District Court

For the Northern District of California

1    misrepresentation to the court to file a notice when you know I do not want to appeal."  Two

2    days later, on November 29, 2009, Ms. Cotterill wrote Mr. Haynes to say, "I just discovered

3    that you did file a notice of appeal against my express wishes that you do not file an

4    appeal."  She requested that he "dismiss the appeal immediately."

5         On December 1, 2009, Mr. Haynes responded that he had filed the notice of appeal

6    "as the time to filed [sic] would have expired."  He stated that he would dismiss the appeal

7    as Mr. Cotterill had requested, but again urged her not to dismiss the appeal before she

8    had obtained an agreement from the defendants regarding the costs and fees.  On

9    December 2, 2009, Ms. Cotterill responded that she understood the point Mr. Haynes was

10   trying to make, but stated that she simply did not agree.  She reiterated that she did not

11   want to file an appeal, and wanted him to "dismiss the appeal before the end of the week

12   despite the ramifications that [he] discuss[ed]."

13        On December 8, 2009, Ms. Cotterill sent Mr. Haynes a hand-written note, again

14   demanding that he dismiss the notice of appeal.  She stated that if the appeal was not

15   dismissed by December 11, 2009, she would discharge him as her attorney.  Nevertheless,

16   Ms. Cotterill asserts, Mr. Haynes did not dismiss the appeal.  Finally, Ms. Cotterill herself

17   filed a request to dismiss the appeal, which was received by the Ninth Circuit on December

18   22, 2009.  The request was granted on December 29, 2009.

19        On January 24, 2010, Ms. Cotterill sent Mr. Haynes an e-mail stating that he was no

20   longer her attorney, and requesting that he return her file.  Mr. Haynes did not return the

21   file, and on March 2, 2010, Ms. Cotterill sent another note telling Mr. Haynes he no longer

22   represented her, and again requesting that he send her "all files and records in this case."

23   On April 30, 2010, Ms. Cotterill sent Mr. Haynes a third e-mail requesting return of her file,

24   and citing the relevant California Rule of Professional Conduct, Rule 3-700.  As of May 27,

25   2011, the date of Ms. Cotterill's declaration filed in support of the Committee's motion for

26   summary judgment, Mr. Haynes had not sent her the file.

27        On March 10, 2010, Judge Larson issued a report and recommendation,

28   recommending that the award of costs against Ms. Cotterill be vacated and that costs be

United States District Court

For the Northern District of California

1   denied, but that sanctions be imposed against Mr. Haynes under 28 U.S.C. § 1927 for the

2   attorneys' fees incurred by defendants after November 5, 2008, the point at which it was

3   absolutely clear that the case had no merit.  Judge Larson also found that Mr. Haynes'

4   conduct in the litigation was vexatious and unreasonable, and that he had made numerous

5   misrepresentations of fact to the court.  On May 11, 2010, Judge White adopted the report

6   and recommendation, and awarded sanctions against Mr. Haynes in the amount of

7   $362,545.61.  That order is on appeal.[1]

8          On February 13, 2012, Mr. Haynes sent Ms. Cotterill an e-mail asserting that she

9   owes him $20,000 for costs incurred in the case, and threatening to sue her if she didn't

10  respond to the e-mail within five days.

11          2.      The Landry case

12          In 2008, Marcus Landry and Daniel Landry retained Mr. Haynes to represent them in

13  connection with claims arising from incidents that had occurred in October 2007 and

14  October 2008, involving alleged unlawful searches and seizures and use of excessive force

15  by San Francisco Police Officers and private security officers.  The case was filed in San

16  Francisco Superior Court in July 2008, and was removed to this court shortly thereafter.

17          Counsel held a Rule 26(f) conference on October 14, 2008, which meant that initial

18  disclosures were due on November 14, 2008.  On February 25, 2009, some of the

19  defendants served document requests and interrogatories on plaintiffs, which meant that

20  responses were due on March 26, 2008.  Notwithstanding numerous meet-and-confer

21  attempts on the part of the City, Mr. Haynes failed to serve timely initial disclosures or

22  responses to defendants' discovery.

23          On May 20, 2009, the City filed a motion to compel.  The Hon. Samuel Conti referred

24  all discovery matters to Magistrate Judge Maria-Elena James.  The City subsequently filed

25  a motion for sanctions, seeking $1000 for the cost of filing the motion to compel.  Judge

26  James issued an order directing plaintiffs to provide the discovery by June 26, 2009, and

27  _____

28          [1]  Mr. Haynes filed a notice of appeal on June 14, 2010.  The appeal was fully briefed
    on October 28, 2011.  The appeal was argued and submitted on May 16, 2012.

United States District Court

For the Northern District of California

1  denying the motion for sanctions without prejudice to refiling if plaintiffs failed to provide the

2  discovery by the deadline.

3        On June 30, 2009, the City filed a renewed motion for sanctions, seeking $1500 on

4  the ground that the discovery had not been provided, and that the City had been forced to

5  file a motion to compel, file two joint letters to the court, file a written request for a

6  telephonic discovery conference, file two motions for sanctions, and participate in a one-

7  and-a-half hour in-person meet-and confer – all because plaintiffs had failed to meet their

8  discovery obligations.  On July 30, 2009, Judge James issued an order awarding $1000 in

9  sanctions against Mr. Haynes personally, and directing him to pay the sanctions by August

10  20, 2009.  Mr. Haynes did not pay the sanctions by that date.

11       Additional discovery disputes ensued, concerning, among other things, Mr. Haynes'

12  assertion of objections to the discovery requests to which he had failed to provide timely

13  responses, his failure to pay the sanctions ordered by the court, and plaintiffs' failure to

14  appear on the dates noticed for their depositions.  On August 24, 2009, Judge James

15  ordered the parties to appear at the court on September 8, 2009, for an in-person meet-

16  and-confer session.  After more than five hours, the parties were unable to agree to a

17  resolution of any of their disputes, with the exception of some tentative dates for the

18  plaintiffs' depositions.

19       The parties then filed joint letters summarizing their disputes and detailing the basis

20  of the disagreement.  On September 16, 2009, Judge James issued an order to show

21  cause why sanctions should not be imposed on plaintiffs' counsel, including further

22  monetary sanctions, as well as discovery sanctions (deeming certain disputed issues

23  admitted and barring the use of certain information).  The order stated, in part, that the

24  court had reviewed the discovery dispute letters, which involved "an issue that is becoming

25  all to familiar in this case" – the lack of compliance by plaintiffs' counsel with the orders of

26  the court, and "more generally, his duties as a lawyer" before the court.

27       Judge James directed Mr. Haynes to file a responsive declaration, and set a hearing

28  for October 8, 2009.  Mr. Haynes did file a declaration, in which he asserted that all the

**United States District Court**
For the Northern District of California

1    problems at the meet-and-confer had been caused by the unreasonableness of counsel for

2    the City defendants.  Following the hearing on October 8, 2009, Judge James issued an

3    order imposing a new deadline on Mr. Haynes to pay the previously imposed $1500 in

4    sanctions, and advising that if he failed to pay the sanctions by that date (November 12,

5    2009), an additional $100 in sanctions would be added for each additional day that he

6    sanctions remained unpaid.

7         At the conclusion of the October 8, 2009 hearing, Mr. Haynes and counsel for

8    defendants (Dirk Larsen for the private security firm defendants, and Daniel Zaheer for the

9    City defendants) walked into the corridor and began discussing deposition scheduling.

10   According to declarations provided by Mr. Larsen and Mr. Zaheer, Mr. Haynes first spoke

11   with Mr. Zaheer, and then began speaking with Mr. Larsen.  At some point during Mr.

12   Haynes' conversation with Mr. Larsen, Mr. Zaheer interposed a comment or question,

13   whereupon Mr. Haynes told him not to interrupt.  Mr. Zaheer responded that he was not

14   interrupting, but that even if he were, that would be fair because Mr. Haynes regularly

15   interrupted him.

16        At this point, according to Mr. Larsen and Mr. Zaheer, Mr. Haynes flew into a rage,

17   accosting Mr. Zaheer and spewing profanities.  Mr. Larsen believed that Mr. Haynes was

18   about to strike Mr. Zaheer, and did not do so only because Mr. Zaheer backed away.  Mr.

19   Zaheer states that Mr. Haynes brushed up against him and shouted threats and profanities,

20   and that he was fearful for his physical safety.  Mr. Zaheer states that he fled into Judge

21   James' courtroom and asked court personnel to request the assistance of court security.  A

22   few minutes later, Mr. Zaheer reported the assault to a deputy U.S. Marshal.  The Marshal

23   began to question the attorneys, and when Mr. Haynes asked if he was being detained, the

24   Marshal responded that he was.

25        Several deputy U.S. Marshals and Federal Protective Services officers then arrived

26   on the scene.  The attorneys were separated and interviewed.  At one point, according to

27   Mr. Zaheer, Mr. Haynes resumed yelling profanities.  When the officers approached, Mr.

28   Haynes began yelling profanities at them as well.  One officer told Mr. Haynes he would

**United States District Court**
For the Northern District of California

1   need to leave the building, and he was escorted out of the building by several officers.

2   On October 21, 2009, Mr. Zaheer wrote a letter to Judge Conti, asking that all future

3   depositions be taken at the federal courthouse, because of the October 8, 2009 incident in

4   which Mr. Zaheer asserted Mr. Haynes had assaulted him.  On November 13, 2009,

5   defendants submitted a case management conference statement, renewing the request

6   that all future depositions be taken at the federal courthouse, and attaching a copy of the

7   Federal Protective Services incident report.

8   On the same date, Mr. Haynes submitted a declaration in which he asserted that

9   "the allegations of the [sic] Mr. Zaheer are without merit[,]" and "are merely conclusionary

10   [sic] allegations without factual support."  He also claimed that prior to the "alleged

11   incident," Mr. Zaheer's conduct had been "outrageous."  Among other things, Mr. Haynes

12   asserted that Mr. Zaheer "yells over the phone and insults," and that he (Mr. Haynes) had

13   repeatedly hung up rather than respond to the yelling and insults.  Mr. Haynes denied that

14   he had lost his "composure" during the meet-and-confer on October 8, 2009, and asserted

15   that the only reason he had approached close to Mr. Zaheer was because he was unable

16   to raise his voice sufficiently to be heard over the distance.  He also disputed the officers'

17   accounts of the incident.

18   On November 20, 2009, Judge Conti held a status conference in the case, at which

19   time the parties were advised that if they continued to fight with each other, the court would

20   issue sanctions.  The parties were further advised that any further disputes were to be

21   brought directly to Judge Conti.  The request to hold depositions in the courthouse was

22   denied.

23   On December 28, 2009, in response to a request made by defendants on November

24   11, 2009, Judge James issued an order requiring plaintiffs to provide discovery they had

25   thus far failed to provide, primarily regarding details of their arrest history and criminal

26   history, which defendants asserted was information central to plaintiffs' claims for damages.

27   This information had been requested in interrogatories propounded in February 2009, and

28   also in prior depositions.  Judge James ordered plaintiffs to appear for supplemental

1   deposition sessions, for which they would pay the cost.  Judge James also awarded

2   sanctions in the amount of $835 to the City defendants, representing one-half of the cost of

3   the prior deposition of Marcus Landry, finding that Mr. Haynes had "unreasonably multiplied

4   these proceedings by obstructing and delaying" the deposition.  The court ordered that

5   payment be made within 14 days.

6          Mr. Haynes did not file objections to the December 28, 2009 order, but rather simply

7   took the position that the order was "null and void," based on Judge Conti's order at the

8   November 20, 2009 status conference that all future disputes should be brought directly to

9   him.  On January 27, 2010, the City defendants filed a request for clarification, seeking a

10  determination as to whether Judge Conti's order was retroactive to the discovery disputes

11  that had arisen prior to the November 20, 2009 status conference.

12         On February 3, 2010, Judge Conti issued an order stating that because Judge

13  James' order related to a dispute that was pending before her prior to the November 20,

14  2009 status conference, the December 28, 2009 discovery order was to have "full force and

15  effect."  Judge Conti again reminded the parties that the court "can and will issue sanctions,

16  up to and including dismissal of this action, should the parties' misconduct and meritless

17  disagreement continue."  Counsel for the City defendants attempted to meet and confer

18  with Mr. Haynes regarding a schedule for complying with Judge James' order, but,

19  according to Mr. Zaheer, Mr. Haynes failed to respond.

20         On February 26, 2010, defendants filed a motion for terminating sanctions, or, in the

21  alternative, issue sanctions and further monetary sanctions, based on plaintiffs' repeated

22  failure to comply with court orders regarding discovery.  In response, Mr. Haynes took issue

23  with the propriety of the discovery requests, asserting that plaintiffs had fully responded to

24  all discovery (or that any failure to respond had been due to "reasonable mistake and

25  neglect"), that there were no issues as to which supplemental deposition sessions were

26  required, and that any problems that had occurred during the course of discovery had been

27  the fault of Mr. Zaheer (who, according to Mr. Haynes, had among other things falsely

28  accused Mr. Haynes of assaulting him, and behaved in an "aggressive" manner towards

**United States District Court**

For the Northern District of California

1    Marcus Landry during his deposition).  On April 9, 2010, Judge Conti issued an order

2    granting the motion for terminating sanctions, and dismissing the case with prejudice.

3         On May 10, 2010, plaintiffs filed a notice of appeal.  Initially, the Ninth Circuit set an

4    August 17, 2010 date for appellants to file their opening brief.  Between August 17, 2010

5    and August 30, 2010, Mr. Haynes on behalf of plaintiffs/appellants filed eight requests for

6    extensions of time to file the opening brief and excerpts of record.  The last two requests

7    were denied, and the appeal dismissed with prejudice, for failure to prosecute, on

8    September 12, 2011, more than 17 months after the filing of the notice of appeal.

9         3.    Other Actions

10        The Standing Committee identified five other cases in which it asserts that Mr.

11   Haynes failed to comply with rules or otherwise engaged in misconduct.  Two of those

12   cases are state court cases, which do not concern this court in connection with the present

13   petition.  Three are cases filed in this district.

14        In Estate of Finau Tapueluelu v. City and County of San Francisco, C-04-1612 CRB

15   (N.D. Cal.), the court found that, less than a month before the scheduled trial date, Mr.

16   Haynes had failed to provide defendants with any of the discovery that had been

17   requested.  Although the court did not sanction Mr. Haynes, it directed that all discovery be

18   provided within a week, and counseled that sanctions, including issue and witness

19   preclusion, could be imposed if he failed to do so.

20        In Edgerly v. City and County of San Francisco, C-03-1269 WHA (N.D. Cal.), the

21   court imposed sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C.

22   § 1927 against the plaintiff and his attorney, Mr. Haynes.  The Ninth Circuit affirmed the

23   imposition of sanctions.  See Edgerly v. City and County of San Francisco, 599 F.3d 946,

24   962-63 (9th Cir. 2010).

25        In Gillis v. City and County of San Francisco, C-08-3871 RS (N.D. Cal.), Mr. Haynes

26   repeatedly referred to opposing counsel (during the course of a May 8, 2009, deposition,

27   and otherwise), as a "poor little white girl."  It does not appear that Mr. Haynes was

28   sanctioned for any improper behavior during the course of this litigation.  However, the

**United States District Court**
For the Northern District of California

1   Hon. Richard Seeborg granted defendants' motion for summary judgment on September

2   21, 2011.  Plaintiffs filed a notice of appeal on October 21, 2011.  Mr. Haynes has since

3   then filed five requests for an extension of time to file the opening brief.  In granting the

4   third request for an extension to June 20, 2012, the Ninth Circuit stated that any further

5   request would be "strongly disfavored."  As of the date of this order, the court had not yet

6   ruled on the fourth or fifth requests.

7          4.       The Standing Committee's motion

8        In its renewed motion for summary judgment,[2] the Standing Committee argues that

9   in the course of the above-described litigation, Mr. Haynes has repeatedly directed

10   derogatory and profane statements towards opposing counsel, engaged in physical threats

11   and intimidation, failed in his duty to communicate with his clients, pursued unmeritorious

12   claims, and displayed a lack of diligence and competence, and that these actions constitute

13   a pattern of misconduct, providing a basis for the court to disbar Mr. Haynes from practice

14   in this court.

15        Mr. Haynes has not yet filed an opposition to the Committee's motion.  However, in

16   his response to the petition, he makes a number of procedural objections relating to the

17   actions of the Committee prior to filing the petition, including efforts to obtain his "consent"

18   to the proposed discipline, the service of the petition on him, and the issuance of the

19   subpoena.  He also appears to be asserting that Ms. Hoeper had some improper motive in

20   sending the letter to Judge Walker, that Judge Walker had some improper motive in

21   referring the matter to the Committee, and that the members of the Committee had some

22   improper motive in acting to institute this proceeding.

23        Mr. Haynes claims that Ms. Hoeper's February 18, 2010 letter was an improper "ex

24   parte communication with a judge on pending matters," in violation of Civil Local Rule 11-

25   _____

26       [2]  The Committee's original motion was filed at the court's direction after Mr. Haynes

27   failed to respond to the order to show cause ("OSC"), but was terminated after Mr. Haynes did
respond, and also based on a showing that the petition, motion, and other papers had been

28   served on Mr. Haynes at an incorrect address.  The Committee revised and refiled the motion
after the re-scheduled hearing on the OSC.

United States District Court

For the Northern District of California

1   4(c), because at the time the letter was submitted, the <u>Cotterill</u>, <u>Landry</u>, and <u>Gillis</u> cases

2   were all still pending; that the referral was improper because Ms. Hoeper "clearly made

3   misstatements of facts" in the letter to Judge Walker, regarding statements made by Mr.

4   Zaheer and Mr. Haynes, and regarding the prior incidents in the <u>Landry</u> and <u>Gillis</u> cases;

5   that the referral to the Committee was improper under Local Rule 11-6(a)(4), because

6   Judge Walker did not have a belief that Mr. Haynes had engaged in unprofessional

7   conduct, and because he failed to refer the matter to the Committee "in writing," as required

8   by Local Rules 11-6(a) and 11-7(c); that the Committee filed the petition prior to obtaining

9   Mr. Haynes' consent, in violation of Local Rule 11-7(c)(3); that Judge Walker's issuance of

10  the subpoena was improper under Local Rule 11-7(c)(1), because he was the referring

11  judge; and that the petition is improper because it does not specifically identify the alleged

12  misconduct, as required by Local Rule 11-7(c)(3).

13          The court has reviewed Mr. Haynes' procedural objections, and finds as follows.

14  First, Ms. Hoeper's letter cannot be considered an improper ex parte communication with a

15  judge regarding a pending matter, in part because the <u>Cotterill</u>, <u>Landry</u>, and <u>Gillis</u> cases

16  were assigned to judges other than Judge Walker.  Second, the question whether any

17  statements in Ms. Hoeper's letter were false is not relevant to the propriety of the referral.

18  Moreover, if Mr. Haynes had been concerned that the referral was based on false

19  information, he could have agreed to meet with the Committee to discuss the substance of

20  the charges before the petition was filed.  Third, assuming the validity of his claim that

21  Local Rules 11-7 and 11-6 were violated by Judge Walker, such violation did not deprive

22  Mr. Haynes of due process or prejudice him in any way, and thus do not provide a basis for

23  dismissing the petition or denying the Committee's motion for summary judgment.

24          Mr. Haynes also poses substantive objections to the factual allegations in the

25  petition itself, asserting that a number of those allegations are false, and arguing that his

26  conduct in connection with the <u>Cotterill</u>, <u>Landry</u>, and <u>Gillis</u> cases was justified and/or has

27  been misrepresented by the Committee or the involved parties, and that the claims

28  regarding the <u>Tapueluelu</u> and <u>Edgerly</u> cases do not reflect any misconduct.  He also claims

14

**United States District Court**
For the Northern District of California

1   that he has cooperated with the disciplinary investigation, that he has never been abusive

2   towards opposing counsel, and that he kept Ms. Cotterill fully apprised of the progress of

3   her case, and filed the appeal (notwithstanding her stated intention not to appeal) only

4   because he was having difficulties "communicating with" her.  These, and related issues,

5   go more towards the substance of the matter at hand, and are discussed below.

6                                                    **DISCUSSION**

7   A.      Legal Standard

8           An attorney being disciplined is entitled to due process, including notice and an

9   opportunity to heard.  In re Corrinet, 645 F.3d 1141, 1145 (9th Cir. 2011).  The court must,

10  moreover, follow its local rules when imposing discipline.  Id. at 1146.  Federal district

11  courts are vested with authority to establish rules applicable to matters before them.  28

12  U.S.C. § 2071(a); Fed. R. Civ. P. 83(a).  This authority, while broad, is subject to both

13  substantive and procedural limitations.

14          Local rules must be "consistent with Acts of Congress and rules of practice and

15  procedure prescribed under [28 U.S.C.] section 2072," (i.e., the Federal Rules).  28 U.S.C.

16  § 2071(a); see also Fed. R. Civ. P. 83(a)(1) (local rules "must be consistent with – but not

17  duplicate" federal statutes and rules; must "conform to any uniform numbering system

18  prescribed by the Judicial Conference;" and must be submitted to the Administrative Office

19  of the United States Courts).  In addition, local rules in federal courts be "consistent with the

20  principles of right and justice."  Frazier v. Heebe, 482 U.S. 641, 645 (1987) (quotation and

21  citation omitted).

22          The grant of rule-making authority under § 2071 and Rule 83 includes the power to

23  establish rules governing counsel appearing before the district court and to sanction

24  attorneys for transgressing those rules.  Zambrano v. City of Tustin, 885 F.2d 1473,

25  1478-79 (9th Cir. 1989). The courts also have inherent authority to discipline lawyers

26  appearing before them.  Id. at 1478.

27          The Civil Local Rules in the Northern District implement this authority by imposing

28  substantive standards of conduct on attorneys practicing in the district, Civ. L.R. 11-4, and

**United States District Court**
For the Northern District of California

1   by prescribing various ways in which attorney discipline may be imposed, including by

2   referral to the Standing Committee and proceedings initiated by a petition for an order to

3   show cause, as here, Civ. L.R. 11-6, 11-7.  Accordingly, the court has the authority to

4   impose discipline on members of the bar of this court, including Mr. Haynes.

5          Effective July 2, 2012, the local rules applicable to attorney discipline proceedings

6   have been revised by the court.  While the citations in this order are to the former version of

7   the local rules, the court will offer Mr. Haynes the option of electing to proceed henceforth

8   under either the former version or the current version.  Copies of both versions are

9   attached to this order.

10  B.     Issues To Be Determined

11         Civil Local Rule 11-4(a) provides that each member of the bar of this court must

12  comply with the standards of professional conduct imposed by the State Bar of California;

13  must comply with the Local Rules of the Court; must practice with the honesty, care, and

14  decorum required for the fair and efficient administration of justice; and must discharge his

15  or her obligations to his or her client and the Court.  Civ. L.R. 11-4(a).  The Committee

16  asserts that Mr. Haynes has violated each of these requirements and that, as to some

17  requirements, he has done so repeatedly.  For this misconduct, the Standing Committee

18  has requested that Mr. Haynes be disbarred.

19         As an initial matter, the court finds that it cannot discipline Mr. Haynes for

20  misconduct for which he has already been sanctioned by a judge of this court.  Thus, the

21  court first determines which issues can be legitimately considered as part of the present

22  proceeding.

23         In the Cotterill case, Judge White imposed sanctions against Mr. Haynes under 28

24  U.S.C. § 1927, based on the report and recommendation issued by Judge Larson, who

25  found that Mr. Haynes' conduct throughout the case was vexatious and unnecessarily

26  proliferated the proceedings.  In particular, Judge Larson found that Mr. Haynes made

27  numerous misstatements of law and fact and ignored court orders; and that in particular

28  after November 6, 2008, the continued prosecution of the case was entirely unreasonable

United States District Court

For the Northern District of California

1  because as of that date the deposition testimony of two key witnesses made it abundantly

2  clear that plaintiff had no viable claims.

3        Judge Larson recommended that defendants' attorneys' fees and costs for the

4  period November 6, 2008 until the date of the order (May 11, 2010) be taxed against Mr.

5  Haynes as a sanction, and Judge White ordered Mr. Haynes to pay $165,578.37 to counsel

6  for the City defendants ($173,231.25 plus costs in the amount of $23,735.99), and

7  $196,967.24 to the Regents defendants ($144,560.00 plus costs in the amount of

8  $21,018.37).

9        Here, the Committee argues that discipline is warranted for Mr. Haynes' violation of

10 various professional rules and ethical duties in connection with the Cotterill case, including

11 the duty to keep his client informed, the duty to follow his client's instructions, the duty to

12 return his client's file when requested to do so, the duty to perform legal services

13 competently, the duty to be truthful to the court, and the duty to act with honesty, care, and

14 decorum.

15       The conduct for which the Committee is seeking disbarment in this proceeding,

16 which primarily relates to the alleged deficiencies in Mr. Haynes' representation of his client

17 Ms. Cotterill, and his conduct towards Mr. Pratt and other opposing counsel, is distinct from

18 the conduct for which Mr. Haynes was previously sanctioned, which primarily relates to Mr.

19 Haynes' failure to follow court orders and his continued pursuit of the case even after it had

20 become clear that Ms. Cotterill had no valid claims.  To the extent the Committee relies on

21 conduct for which Mr. Haynes was previously sanctioned in the Cotterill (violation of the

22 duty to be truthful to the court), the court eliminates this conduct from consideration here.

23       In the Landry case, the main issues identified by the Committee are the plaintiffs'

24 continued failure to provide discovery, even in the face of the imposition of sanctions, and

25 the ultimate issuance of terminating sanctions by Judge Conti, based on plaintiffs' repeated

26 failure to provide discovery; the altercation between Mr. Haynes and Mr. Zaheer and court

27 security on October 9, 2009; and the dismissal of the appeal by the Ninth Circuit, for failure

28 to prosecute.

**United States District Court**

For the Northern District of California

1    The Committee asserts that discipline is warranted for violation of various ethical

2  rules and professional duties in connection with the <u>Landry</u> case, including the duty to

3  perform legal services competently, the duty to be truthful to the court, and the duty to act

4  with honesty, care, and decorum.

5    The conduct for which the Committee is seeking disbarment in this proceeding,

6  which primarily relates to Mr. Haynes' alleged deficiencies in representing his clients

7  Marcus and Daniel Landry (resulting in the issuance of terminating sanctions by the district

8  court), as well as his behavior during the October 8, 2009 incident, is distinct from the

9  conduct for which Mr. Haynes was previously sanctioned, which primarily relates to his

10  failure to provide discovery.  Although there is some overlap with regard to the issue of

11  failure to provide discovery, it was the plaintiffs in <u>Landry</u> who actually incurred the

12  terminating sanctions (and later, the dismissal by the Ninth Circuit), and not Mr. Haynes.

13    In the <u>Gillis</u> case, the main issue identified by the Committee is Mr. Haynes' conduct

14  towards opposing counsel during the May 2009 deposition.  No sanctions were imposed on

15  Mr. Haynes during the course of the litigation of that case, and thus, any conduct for which

16  the Committee seeks discipline has not previously been the subject of any disciplinary

17  action.

18    In <u>Tapueluelu</u>, sanctions were not imposed (though they were threatened), and in

19  <u>Edgerly</u>, sanctions were imposed.  However, it does not appear that these cases are a

20  primary focus of the petition or the motion for summary judgment, except insofar as they

21  might be used to support the Committee's assertion of a "pattern of misconduct."

22    Accordingly, the issues to be determined in this proceeding are whether Mr. Haynes

23  violated the rules of ethics and professional responsibility with regard to the duties owed to

24  his clients in <u>Cotterill</u> and <u>Landry</u>; whether he violated the rules of ethics and professional

25  responsibility in connection with his behavior towards opposing counsel, in <u>Cotterill</u>, <u>Landry</u>,

26  and <u>Gillis</u>; and whether he violated his duty of honesty and candor to the court in

27  connection with the October 8, 2009 incident in <u>Landry</u>; and if so, what disciplinary action

28  should be taken.

United States District Court

For the Northern District of California

C.     The Rule 56(d) motion

At the hearing on the OSC, both sides presented proposals and argument with regard to procedures to be followed in addressing the issues raised in the petition.  Mr. Haynes suggested that he needed a year to conduct discovery, to include the depositions of his clients, opposing counsel, the U.S. Marshals, court personnel, judges, and members of the Committee.  The Committee believed that the petition could be resolved on the undisputed facts.  The court determined that the issues could not be resolved based on the petition alone (and the response thereto) given the existence of certain factual disputes.  However, Mr. Haynes' oral representation also suggested that he might be seeking unnecessary, unreasonable, or inappropriate discovery.

As a result, the procedure elected by the court was, first, to have the Committee refile its motion for summary judgment, which would be revised so as to eliminate as many factual disputes as possible, and then, to have Mr. Haynes file a motion pursuant to Rule 56(d), if in his view he needed discovery to respond to the revised motion for summary judgment, so that appropriate discovery could be identified.  Having now reviewed Mr. Haynes' Rule 56(d) request, the court finds that he is still seeking unnecessary, unreasonable, and inappropriate discovery.

Rule 56(d), formerly Rule 56(f), permits a court to continue a summary judgment motion when a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  The 2010 Advisory Committee Notes to Rule 56 state that subdivision (d) "carries forward without substantial change the provisions of former subdivision (f)."

A party requesting a Rule 56(d) continuance bears the burden setting forth in affidavit form the specific facts he hopes to elicit from further discovery; and of demonstrating that the facts sought exist, and that the sought-after facts are essential to oppose summary judgment.  Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008); Fed. R. Civ. P. 56(d); see also Tatum v. City & Cnty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006); Chance v. Pac-Tel Teletrac

United States District Court

For the Northern District of California

1   Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  Failing to meet this burden "is grounds for

2   the denial" of a Rule 56(d) motion.  Pfingston v. Ronan Eng. Co., 284 F.3d 999, 1005 (9th

3   Cir. 2002).

4        The bulk of Mr. Haynes' declaration consists of a list of various types of proposed

5   discovery including depositions, document requests, and what appear to be interrogatories.

6   Mr. Haynes seeks depositions of Cheryl Cotterill, and possibly her mother Joan Cotterill;

7   R. Wesley Pratt; Deputy City Attorney Meredith Osborn; former Deputy City Attorney Daniel

8   Zaheer; an unidentified witness to the altercation between Mr. Haynes and Mr. Zaheer on

9   October 8, 2009; Dirk Larsen; Deputy U.S. Marshall Hanson; FPS Officer Almeraz; Brenda

10  Tolbert, courtroom deputy to the Hon. Maria-Elena James; and Captain Daniel Mahoney of

11  the San Francisco Police Department.  He also seeks copies of correspondence and other

12  documents from Ms. Cotterill, Mr. Pratt, the City Attorney's Office, Ms. Hoeper, Ms. Osborn,

13  Mr. Zaheer, Mr. Larsen, Ms. Tolbert, Margaret Baumgartner, Captain Mahoney, the San

14  Francisco Police Department, and the members of the Committee.  Finally, he lists what

15  appear to be proposed interrogatories to be propounded to the Committee.

16       Mr. Haynes asserts that the information he seeks from Ms. Cotterill addresses "facts

17  of the filing of the notice of appeal and the returning of her file and what her intention were

18  [sic], as well as conditions that my [sic] have effected [sic] her ability to communicate."  He

19  contends that Ms. Osborn, Mr. Pratt, Mr. Larsen, Mr. Zaheer, Captain Mahoney, and the

20  unidentified witness to the October 8, 2009 altercation "[a]ll have first hand information

21  regarding the claims in the petition.  As well as information as to improper motive of

22  allegations in the petition."  He contends in addition that Captain Mahoney prepared a false

23  police report relating to an alleged assault (which incident is not clearly identified).

24       Mr. Haynes also claims that Ms. Hoeper "prepared the letter and has information

25  regarding the improper motive and false facts in the letter[;]" and that Deputy Marshall

26  Hanson, Officer Almeraz, and Ms. Tolbert "[a]ll have information regarding the improper

27  stop and treatment of respondent with regard to the Zaheer incident."  Finally, he asserts

28  that the Committee "[h]as information regarding the improper motivation and unlawful or

**United States District Court**

For the Northern District of California

1   unreasonable filing and prosecution of the Petition, including race, retaliatory [sic], and

2   selective prosecution of the current matter."

3        The court has read and considered respondent's Rule 56(d) declaration and finds

4   that the motion must be DENIED.  Mr. Haynes has not met his burden of identifying

5   relevant information and showing how it is essential to oppose the Committee's motion for

6   summary judgment.  See Family Home, 525 F.3d at 827; Moss v. U.S. Secret Serv., 572

7   F.3d 962, 966 n.3 (9th Cir. 2009).  Nor has he met his burden of putting forth sufficient facts

8   "to show that the evidence sought exists."  Volk v. D.A. Davidson & Co., 816 F.2d 1406,

9   1416 (9th Cir. 1987); see also Roberts v. McAfee, Inc., 660 F.3d 1156, 1169 (9th Cir.

10  2011).

11       In addition, with regard to the proposed depositions, the court finds, in light of the

12  type of conduct that is at issue in this proceeding, that it would serve no good end to allow

13  Mr. Haynes to depose the eleven proposed witnesses.  Should Mr. Haynes succeed in

14  submitting some reasonable explanation as to what relevant information he believes any

15  particular witness might have, and why such information is necessary to oppose the motion

16  for summary judgment, the court will conduct an evidentiary hearing, at which time Mr.

17  Haynes may call witnesses identified by the court as necessary.

18       The court has elected to follow this procedure – to conduct an evidentiary hearing

19  rather than allowing Mr. Haynes to depose witnesses – for several reasons.  These include

20  the nature of allegations in the petition, including the allegation that Mr. Haynes verbally

21  abused opposing counsel in e-mails and at depositions, and at the courthouse following

22  court proceedings; the conduct by Mr. Haynes that has prompted requests from opposing

23  counsel to have depositions conducted at the courthouse, and that necessitated law

24  enforcement assistance; and the general nature of Mr. Haynes' rambling, unfocused, semi-

25  coherent responses to the court's questions, and similar argument in his papers.

26       As for which witnesses Mr. Haynes may call to testify at an evidentiary hearing, the

27  court's decision will depend on Mr. Haynes' showing as to the necessity of such testimony.

28  However, the court specifically finds as follows with regard to six of the proposed

1    witnesses.

2         First, with regard to Cheryl Cotterill, the conduct to be addressed in connection with

3    the petition is Mr. Haynes' failure to communicate with his client and to keep her informed

4    of the summary judgment ruling, his failure to follow her instructions regarding the filing of

5    the appeal and the dismissing of the appeal that was filed over her objections, and the

6    failure to return her client file when requested to do so.  As discussed below, there is no

7    factual dispute as to any of these events, as they are all established in the record, and thus,

8    there is no reason for Ms. Cotterill to testify as to her personal knowledge.  Should Mr.

9    Haynes wish to provide some explanation or justification for his conduct, he can do so

10   without Ms. Cotterill's presence.

11        Second, Cheryl Cotterill's mother, Joan Cotterill, was not a witness to any conduct

12   by Mr. Haynes that forms part of the present proceeding, which is based on Mr. Haynes'

13   violation of his duties towards his client.  Joan Cotterill may have some personal

14   information regarding the incident that gave rise to the filing of the Cotterill case in the first

15   instance, but she was not Mr. Haynes' client, and he thus did not owe her any ethical or

16   professional duty.  Thus, Joan Cotterill may not be called as a witness.

17        Third, the claims arising out of Mr. Haynes' improper conduct towards Mr. Pratt in

18   the Cotterill case are based on Mr. Haynes' own e-mails, all of which are part of the record,

19   and thus, there is no reason for Mr. Pratt to testify as to his own personal knowledge.

20   Should Mr. Haynes wish to provide some explanation or justification for his conduct, he can

21   do so without Mr. Pratt's presence.

22        Fourth, the claims arising out of Mr. Haynes' conduct towards Ms. Osborn during the

23   course of a particular deposition taken in the Gillis case are entirely reflected in the

24   transcript of that deposition, and thus, there is no need for Ms. Osborn to testify as to her

25   own personal knowledge.  Should Mr. Haynes wish to provide some explanation or

26   justification for his conductc, he can do so without Ms. Osborn's presence.

27        Fifth, Ms. Tolbert, Judge James' courtroom deputy, was not a witness to the

28   altercation outside the courtroom on October 8, 2009, and thus has no personal knowledge

**United States District Court**

For the Northern District of California

1   of the incident.  Her only involvement was the placing of a call to court security, at the

2   request of Mr. Zaheer – a point that is not disputed.  However, she cannot be questioned

3   regarding the conduct of either Mr. Haynes or Mr. Zaheer in the corridor outside the

4   courtroom, during the actual altercation, or after the altercation when court security arrived.

5       Sixth, it is unclear from Mr. Haynes' Rule 56(d) request what personal information he

6   believes Captain Mahoney may have regarding the conduct that is at issue in this

7   proceeding.  Unless Mr. Haynes is able to make such a showing, the court will not permit

8   Captain Mahoney to be called as a witness.

9       As for the proposed document requests, many of the requests seek information that

10  is plainly not relevant to the specific allegations of misconduct that form the basis of the

11  petition and the motion for summary judgment.  For example, the following all appear to

12  lack any relevance to the issues to be decided in this matter – (a) correspondence between

13  Ms. Cotterill and any attorneys she may have contacted after the court granted defendants'

14  motion for summary judgment; (b) e-mails or other correspondence sent to Ms. Cotterill's

15  mother, Joan Cotterill; (c) correspondence between the Committee and Mr. Pratt, Mr.

16  Zaheer, Ms. Tolbert, Ms. Baumgartner, Ms. Hoeper, or the court; (d) documents from the

17  City Attorney's Office relating to the employment of, or regarding evaluations of or

18  complaints concerning, Mr. Zaheer or Ms. Osborn; (e) documents relating to a police report

19  prepared by Captain Mahoney, and/or the use of said police report;[3] (f) correspondence

20  between Judge Walker or anyone in his office and Judge Larson; or between Judge Walker

21  and Ms. Hoeper; (g) notices or e-mails sent by Ms. Hoeper regarding any requirement that

22  depositions be taken in a secured facility; (h) documents regarding the Committee's

23  decision to file the petition, or documents or other information relating to the service of the

24  petition and the order to show cause, or to the issuance of the subpoena;

25  (i) documents regarding the relationship of any Committee members to the City Attorney's

26  Office; and (j) documents or other information regarding other disciplinary actions referred

27  _____

28      [3]  The court is unable to locate in the petition or the motion for summary judgment any
reference to Captain Mahoney or the preparation or use of the alleged police report.

United States District Court

For the Northern District of California

1    to the Committee.

2           Finally, the court will not permit discovery of documents or other information that

3    relate to undisputed issues raised by the petition and motion for summary judgment with

4    regard to the Cotterill case.  The facts that cannot reasonably be disputed include whether

5    Mr. Haynes notified Ms. Cotterill that he had failed to file a timely opposition to defendants'

6    motion for summary judgment, whether he notified Ms. Cotterill that the court had issued an

7    order to show cause why the case should not be dismissed for lack of prosecution, and

8    whether he notified Ms. Cotterill that defendants' motion for summary judgment had been

9    granted.  It is also undisputed that Mr. Haynes filed an appeal in direct contravention of Ms.

10   Cotterill's express wishes, and that he failed to promptly return Ms. Cotterill's client file to

11   her upon her request; and that he regularly used profane and unprofessional language in

12   his written communications with Mr. Pratt (as reflected in Mr. Haynes' e-mails).

13          With regard to the Landry case, it is undisputed that the district court entered

14   terminating sanctions as a result of Mr. Haynes' failure to serve discovery, even when

15   subject to an order compelling service by a particular date.  It is also undisputed that the

16   Ninth Circuit dismissed the appeal for failure to prosecute, after Mr. Haynes' repeated

17   failure to file the opening brief in accordance with the schedule set by the court.

18          With regard to the Gillis case, it is undisputed that Mr. Haynes repeatedly referred to

19   Ms. Osborn as a "poor little white girl" (as reflected in the deposition transcript).

20          Other facts, however, do appear to be disputed.  These include whether Mr. Haynes

21   lost his composure, used profane language, and/or assaulted Mr. Zaheer during the

22   October 8, 2009 incident outside Judge James' courtroom; whether he was "provoked" by

23   the security officers during their on-scene investigation of that incident; and whether he

24   knowingly sought to mislead the court regarding his behavior during that incident.

25          Evidence regarding these disputed issues will most effectively be obtained by means

26   of live testimony during an evidentiary hearing to be conducted at the court.  Thus, it

27   appears highly unlikely that any discovery will be warranted.  If Mr. Haynes is able to

28   provide a Rule 56(d) declaration identifying more focused discovery, and explaining the

reasons such discovery is necessary to oppose the motion as to the issues identified by the court as properly before it, as required by the Rule, the court will reconsider whether to allow any discovery to go forward.

**CONCLUSION**

In accordance with the foregoing, respondent's Rule 56(d) motion is DENIED.  The parties will adhere to the following schedule.  No later than July 20, 2012, Mr. Haynes shall provide a statement indicating whether he wishes to proceed under the former version of the local rules or under the version that became effective on July 2, 2012.  Also, no later than July 20, 2012, he may submit a revised Rule 56(d) declaration (if needed).  Otherwise, his opposition to the motion for summary judgment must be filed within 30 days of the date of this order.  If Mr. Haynes files a revised Rule 56(d) declaration, the Committee may file a response within one week thereafter.  The Committee's reply to Mr. Haynes' opposition to the motion for summary judgment must be filed within 14 days of the date Mr. Haynes files the opposition.

**IT IS SO ORDERED.**

Dated:  July 6, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

# APPENDIX A

**United States District Court**

For the Northern District of California

# 11. ATTORNEYS
# (Effective Through July 1, 2012)

## 11-1. The Bar of this Court

**(a) Members of the Bar.** Except as provided in Civil L.R. 11-2, 11-3 and 11-9, only members of the bar of this Court may practice in this Court. The bar of this Court consists of attorneys of good moral character who are active members in good standing of the bar of this Court prior to the effective date of these local rules and those attorneys who are admitted to membership after the effective date.

**(b) Eligibility for Membership.** After the effective date of these rules an applicant for admission to membership in the bar of this Court must be an attorney who is an active member in good standing of the State Bar of California.

**(c) Procedure for Admission.** Each applicant for admission must present to the Clerk a sworn petition for admission in the form prescribed by the Court. The petition must be accompanied by a certified copy of certificate of membership in the State Bar of California. Prior to admission to the bar of this Court, an attorney must certify:

    **(1)** Knowledge of the contents of the Federal Rules of Civil and Criminal Procedure and Evidence, the Rules of the United States Court of Appeals for the Ninth Circuit and the Local Rules of this Court;

    **(2)** Familiarity with the Alternative Dispute Resolution Programs of this Court; and

    **(3)** Understanding and commitment to abide by the Standards of Professional Conduct of this Court set forth in Civil L.R. 11-4.

**(d) Admission Fees.** Each attorney admitted to practice before this Court under this Local Rule must pay to the Clerk the fee fixed by the Judicial Conference of the United States, together with an assessment in an amount to be set by the Court. The assessment will be placed in the Court Non-Appropriated Fund for library, educational and other appropriate uses.

**(e) Admission.** Upon signing the prescribed oath and paying the prescribed fees, the applicant may be admitted to the bar of the Court by the Clerk or a Judge, upon verification of the applicant's qualifications.

**(f) Certificate of Good Standing.** A member of the bar of this Court, who is in good standing, may obtain a Certificate of Good Standing by presenting a written request to the Clerk and paying the prescribed fee.

## 11-2. Attorneys for the United States

Attorneys employed or retained by the United States government or any of its agencies may practice in this Court in all actions or proceedings within the scope of their employment or retention by the United States.

## 11-3. *Pro Hac Vice*

**(a) Application.** An attorney who is not a member of the bar of this Court may apply to appear *pro hac vice* in a particular action in this district by filing a written application on oath certifying the following:

    **(1)** That he or she is an active member in good standing of the bar of a United States

Court or of the highest court of another State or the District of Columbia, specifying such bar;

**(2)** That he or she agrees to abide by the Standards of Professional Conduct set forth in Civil L.R. 11-4, and to become familiar with the Local Rules and Alternative Dispute Resolution Programs of this Court;

**(3)** That an attorney, identified by name, who is a member of the bar of this Court in good standing and who maintains an office within the State of California, is designated as co-counsel.

**(b) Disqualification from pro hac vice appearance.** Unless authorized by an Act of Congress or by an order of the assigned judge, an applicant is not eligible for permission to practice *pro hac vice* if the applicant:

**(1)** Resides in the State of California; or

**(2)** Is regularly engaged in the practice of law in the State of California. This disqualification shall not be applicable if the *pro hac vice* applicant (i) has been a resident of California for less than one year; (ii) has registered with, and completed all required applications for admission to, the State Bar of California; and

**(3)** Has officially registered to take or is awaiting his or her results from the California State Bar exam.

**(c) Approval.** The Clerk shall present the application to the assigned judge for approval. The assigned judge shall have discretion to accept or reject the application.

**(d) Admission Fee.** Each attorney requesting to be admitted to practice under Civil L.R. 11-3 must pay to the Clerk a fee in an amount to be set by the Court. The assessment will be placed in the Court's Non-Appropriated Fund for library, educational, and other appropriate uses. If the Judge rejects the application, the attorney, upon request, shall have the fee refunded.

**(e) Appearances and Service on Local Co-Counsel.** All papers filed by the attorney must indicate appearance *pro hac vice*. Service of papers on and communications with local co-counsel designated pursuant to Civil L.R. 11-3(a)(3) shall constitute notice to the party.

# 11-4. Standards of Professional Conduct

**(a) Duties and Responsibilities.** Every member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must:

**(1)** Be familiar and comply with the standards of professional conduct required of members of the State Bar of California;

**(2)** Comply with the Local Rules of this Court;

**(3)** Maintain respect due to courts of justice and judicial officers;

**(4)** Practice with the honesty, care, and decorum required for the fair and efficient administration of justice;

**(5)** Discharge his or her obligations to his or her client and the Court; and

**(6)** Assist those in need of counsel when requested by the Court.

**United States District Court**
For the Northern District of California

**Commentary**

The California Standards of Professional Conduct are contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto.

**(b) Prohibition Against Bias.** The practice of law before this Court must be free from prejudice and bias. Treatment free of bias must be accorded all other attorneys, litigants, judicial officers, jurors and support personnel. Any violation of this policy should be brought to the attention of the Clerk or any Judge for action under Civ. L.R. 11-6.

**(c) Prohibition against *Ex Parte* Communication.** Except as otherwise provided by law, these Local Rules or otherwise ordered by the Court, attorneys or parties to any action must refrain from making telephone calls or writing letters or sending copies of communications between counsel to the assigned Judge or the Judge's law clerks or otherwise communicating with a Judge or the Judge's staff regarding a pending matter, without prior notice to opposing counsel.

**Commentary**

This rule is not intended to prohibit communications with a Courtroom Deputy Clerk regarding scheduling.

# 11-5. Withdrawal from Case

**(a) Order Permitting Withdrawal.** Counsel may not withdraw from an action until relieved by order of Court after written notice has been given reasonably in advance to the client and to all other parties who have appeared in the case.

**(b) Conditional Withdrawal.** When withdrawal by an attorney from an action is not accompanied by simultaneous appearance of substitute counsel or agreement of the party to appear pro se, leave to withdraw may be subject to the condition that papers may continue to be served on counsel for forwarding purposes (or on the Clerk, if the Court so directs), unless and until the client appears by other counsel or pro se. When this condition is imposed, counsel must notify the party of this condition. Any filed consent by the party to counsel's withdrawal under these circumstances must include acknowledgment of this condition.

# 11-6. Discipline

**(a) General.** In the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, the Judge may do any or all of the following:

**(1)** Initiate proceedings for civil or criminal contempt under Title 18 of the United States Code and Rule 42 of the Federal Rules of Criminal Procedure;

**(2)** Impose other appropriate sanctions;

**(3)** Refer the matter to the appropriate disciplinary authority of the state or jurisdiction in which the attorney is licensed to practice;

**(4)** Refer the matter to the Court's Standing Committee on Professional Conduct; or

**(5)** Refer the matter to the Chief Judge for her or him to consider whether to issue an order to show cause under Civ. L.R. 11-7.

**(b) "Attorney" Defined.** For purposes of Civil L.R. 11-6, the term "attorney" may include law corporations and partnerships, when the alleged conduct occurs in the course and scope of

employment by the corporation or partnership, and includes attorneys admitted to practice in this Court *pro hac vice* pursuant to Civil Local Rule 11-3.

**(c) Standing Committee on Professional Conduct.** The Court will appoint as Special Masters for Disciplinary Proceedings pending before the Court, a Standing Committee on Professional Conduct consisting of seven members of the bar and designate one of the members to serve as Chair of the Committee. The members of the Committee shall continue in office for a period of 4 years. Members shall serve staggered terms, with four of the first appointees serving for 2 years and three members serving for 4 years.

**(d) Discipline Oversight Committee.** The Chief Judge shall appoint three (3) or more Judges to a Discipline Oversight Committee which shall oversee the administration of this Local Rule.

# 11-7. Reciprocal Discipline and Discipline Following Felony Conviction

**(a) Notice.** Any attorney admitted to practice in this Court who is convicted of a felony, suspended, disbarred or placed on disciplinary probation by any court, or who resigns from the bar of any court with an investigation into allegations of unprofessional conduct pending, must give notice to the Clerk in writing within 14 days of such event.

**(b) Order to Show Cause.** Unless referred to the Standing Committee on Professional Conduct, matters subject to reciprocal discipline on the grounds listed in paragraph (a) above shall be handled as follows:

**(1)** In such matters, the Chief Judge shall issue an order to the attorney that he or she show cause why the attorney should not be disbarred, suspended, placed on disciplinary probation or otherwise disciplined.

**(2)** If no response is received to an order to show cause within 28 days of mailing, the Chief Judge shall make an independent review of the record of the other proceedings to determine that there was no deprivation of due process, sufficient proof of misconduct, and that no grave injustice would result from the imposition of discipline. The Chief Judge shall issue an appropriate order.

**(3)** An attorney who wishes to contest reciprocal discipline must file with the Court a timely response to the order to show cause. The Chief Judge may then act on the matter, assign it to another judge or refer it to the Standing Committee on Professional Conduct for recommendation.

**(4)** An attorney disbarred, suspended or placed on disciplinary probation under the reciprocal discipline provisions of this rule may seek reinstatement upon completion of the period of suspension, disbarment or disciplinary probation by filing a petition with the Clerk, together with proof of any reinstatement by the reciprocal jurisdiction. An attorney disbarred by reason of a felony conviction may not petition for reinstatement until at least one year after entry of the disbarment order.

**(c) Matters Referred to the Standing Committee.** Unless otherwise directed by the Court, the Standing Committee on Professional Conduct shall investigate any charge or information, referred in writing by a Judge of this Court, that any member of the bar of this Court or any attorney permitted to practice in this Court has engaged in unprofessional conduct in connection with an action in this district, in accordance with the following procedure:

**(1)** Each matter referred shall be assigned an appropriate number by the Clerk, who shall maintain a file under seal. At the written request of the Standing Committee, the Chief Judge (or in a matter referred by the Chief Judge, the General Duty Judge) may direct the issuance of subpoenas and subpoenas ducestecum.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

**(2)** Investigations shall be conducted informally as the Standing Committee deems advisable. Investigations shall be confidential unless the Discipline Oversight Committee, upon application by the Standing Committee on Professional Conduct or the attorney, concludes that there is a compelling reason to make the matter public. The Standing Committee may finally resolve any referred matter informally, short of formal discipline, as it deems appropriate, and must provide a report of its investigation and any resolution to the referring judge. Records shall be maintained as directed by the Discipline Oversight Committee.

**(3)** All final actions of the Standing Committee require a majority vote. However, the Standing Committee may organize itself and conduct its affairs by subcommittees of one or more members as it deems advisable. If a majority of the members determine that public reprimand, suspension, disbarment, or other formal discipline is warranted, and the respondent attorney does not consent, the Standing Committee shall institute a disciplinary proceeding by filing with the Clerk a sealed petition that identifies specifically the alleged misconduct. Upon the filing of the petition, the proceeding shall be assigned to a Judge, other than the referring Judge, in the same manner as any other civil action or proceeding. Unless otherwise directed by the assigned judge, the proceeding shall then be presented by a member of the Standing Committee. The presenting attorney will be paid out-of-pocket expenses from court funds.

**(4)** The Judge to whom the proceeding is assigned shall issue an order to show cause setting a date for hearing, addressed to the respondent attorney, requiring the attorney to appear and show cause why he or she should not be disciplined as prayed for in the petition. The order shall direct that a copy thereof, together with a copy of the petition, be served on the respondent in a manner permitted by Fed. R. Civ. P. 5(b) not less than 35 days in advance of the date specified for hearing. Any response must be filed at least 21 days in advance of the date specified for hearing. Thereafter, the matter shall proceed in accordance with the Federal Rules of Civil Procedure and this Court's Civil Rules as to discovery, motion practice, pretrial and trial as in other civil actions. Written findings of fact and an order based thereon shall be filed by the Judge when dismissing the proceeding or when imposing discipline.

**(5)** Except with respect to reciprocal discipline pursuant to subparagraph (a) of this Local Rule, any order of disbarment or suspension from practice for more than one year shall be reviewable by a panel of three Judges of this Court designated by the Chief Judge, upon petition filed by the respondent within 14 days of filing of the order. Discipline is not stayed during such a review, absent contrary order from the panel or the ordering judge. Review by any such panel shall be de novo as to matters of law and under the substantial evidence standard as to matters of fact. This provision does not apply to revocation of permission to practice *pro hac vice*.

**(6)** The Clerk shall give prompt notice of any order of discipline imposed pursuant to this Local Rule to the disciplinary body of the court(s) before which the respondent attorney has been admitted to practice.

**(d) Costs.** Any discipline or other resolution imposed under this Local Rule may include an order that the respondent attorney pay costs of prosecution, including out-of-pocket expenses of the presenting attorney.

### Cross Reference

See Fed. R. Civ. P. 11(c), 16(f), 37.

# 11-8. Sanctions for Unauthorized Practice

A person who exercises, or pretends to be entitled to exercise, any of the privileges of membership in the bar of this Court, when that person is not entitled to avail themselves of such membership privileges, shall be subject to sanctions or other punishment, including a finding of contempt.

# 11-9. Student Practice

**(a) Permission to Appear.** With the approval of the assigned Judge, a certified law student who complies with these Local Rules and acts under the supervision of a member of the bar of this Court may engage in the permitted activities set forth in this Local Rule.

**(b) Permitted Activities.** With respect to a matter pending before this Court, a certified law student may:

**(1)** Negotiate for and on behalf of the client or appear at Alternative Dispute Resolution (ADR) proceedings, provided that the activity is conducted under the general supervision of a supervising attorney;

**(2)** Appear on behalf of a client in the trial of a misdemeanor or petty offense, provided the appearance is under the general supervision of a supervising attorney who is immediately available to attend the proceeding if the Judge decides to require the presence of the supervising attorney and, if the client is a criminal defendant, the client has filed a consent with the Court; and

**(3)** Appear on behalf of a client in any other proceeding or public trial, provided the appearance is under the direct and immediate supervision of a supervising attorney, who is present during the proceedings.

**(c) Requirements for Eligibility.** To be eligible to engage in the permitted activities, a law student must submit to the Clerk:

**(1)** An application for certification on a form established for that purpose by the Court. The Clerk is authorized to issue a certificate of eligibility;

**(2)** A copy of a Notice of Student Certification or Recertification from the State Bar of California, or a certificate from the registrar or dean of a law school accredited by the American Bar Association or the State Bar of California that the law student has completed at least one-third of the graduation requirements and is continuing study at the law school, (or, if a recent graduate of the law school, that the applicant has registered to take or is awaiting results of the California State Bar Examination). The certification may be withdrawn at any time by the registrar or dean by providing notice to that effect to the Court; and

**(3)** Certification from a member of the bar of this Court that he or she will serve as a supervising attorney for the law student. The certification may be withdrawn at any time by a supervising attorney by providing notice to that effect to the Court.

**(d) Requirements of Supervising Attorney.** A supervising attorney must:

**(1)** Be admitted or otherwise permitted to practice before this Court;

**(2)** Sign all documents to be filed by the student with the Court;

**(3)** Assume professional responsibility for the student's work in matters before the Court; and

**(4)** Assist and counsel the student in the preparation of the student's work in matters before the Court.

**(e) Termination of Privilege.** The privilege of a law student to appear before this Court under this rule may be terminated by the Court at any time in the discretion of the Court, without the necessity to show cause.

# 11. Attorneys
# (Effective July 2, 2012)

## 11-1. The Bar of this Court

**(a) Members of the Bar.** Except as provided in Civil L.R. 11-2, 11-3 and 11-9, an attorney must be a member of the bar of this Court to practice in this Court and in the Bankruptcy Court of this District.

**(b) Eligibility for Membership.** To be eligible for admission to and continuing membership in the bar of this Court, an attorney must be an active member in good standing of the State Bar of California, except that for any attorney admitted before September 1, 1995 based on membership in the bar of a jurisdiction other than California, continuing active membership in the bar of that jurisdiction is an acceptable alternative basis for eligibility.

**(c) Procedure for Admission.** Each applicant for admission must present to the Clerk a sworn petition for admission in the form prescribed by the Court. Prior to admission to the bar of this Court, an attorney must certify:

**(1)** Knowledge of the contents of the Federal Rules of Civil and Criminal Procedure and Evidence, the Rules of the United States Court of Appeals for the Ninth Circuit and the Local Rules of this Court;

**(2)** Familiarity with the Alternative Dispute Resolution Programs of this Court; and

**(3)** Understanding and commitment to abide by the Standards of Professional Conduct of this Court set forth in Civil L.R. 11-4.

**(d) Admission Fees.** Each attorney admitted to practice before this Court under this Local Rule must pay to the Clerk the fee fixed by the Judicial Conference of the United States, together with an assessment in an amount to be set by the Court. The assessment will be placed in the Court Non-Appropriated Fund for library, educational and other appropriate uses.

**(e) Admission.** Upon signing the prescribed oath and paying the prescribed fees, the applicant may be admitted to the bar of the Court by the Clerk or a Judge, upon verification of the applicant's qualifications.

**(f) Certificate of Good Standing.** A member of the bar of this Court who is in good standing may obtain a Certificate of Good Standing by presenting a written request to the Clerk and paying the prescribed fee.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**(g) Reciprocal Administrative Change in Attorney Status.** Upon being notified by the State Bar of California (or of another jurisdiction that is the basis for membership in the bar of this Court) that an attorney is deceased, has been placed on "voluntary inactive" status or has resigned for reasons not relating to discipline, the Clerk will note "deceased," "resigned" or "voluntary inactive," as appropriate, on the attorney's admission record. An attorney on "voluntary inactive" status will remain inactive on the roll of this Court until such time as the State Bar or the attorney has notified the Court that the attorney has been restored to "active" status. An attorney who has resigned and wishes to be readmitted must petition the Court for admission in accordance with subparagraphs (c) and (d) of this Rule.

**(1)** The following procedure will apply to actions taken in response to information provided by the State Bar of California (or of another jurisdiction or other jurisdiction that is the basis for membership in the bar of this Court) of a suspension for (a) a period of less than 30 days for any reason or (b) a change in an attorney's status that is temporary in nature and may be reversed solely by the attorney's execution of one or more administrative actions. Upon receipt of notification from the State Bar that an attorney has been suspended for any of the following, the Clerk will note the suspension on the attorney's admission record:

**(A)** Noncompliance with Rule 9.22 child and family support;

**(B)** Failure to pass PRE;

**(C)** Failure to pay bar dues;

**(D)** Failure to submit documentation of compliance with continuing education requirements.

While suspended, an attorney is not eligible to practice in this Court or in the Bankruptcy Court of this District. In the event that an attorney files papers or otherwise practices law in this Court or in the Bankruptcy Court while an administrative notation of suspension is pending on the attorney's admission record, the Clerk will verify the attorney's disciplinary status with the State Bar (or other jurisdiction, if applicable). If the attorney is not then active and in good standing, the Chief District Judge will issue an order to show cause to the attorney in accordance with Civil L.R. 11-7(b)(1).

Upon receipt by the Court of notification from the State Bar that the attorney's active status has been restored, the reinstatement will be noted on the attorney's admission record.

**(2)** In response to information provided by the State Bar of California (or other jurisdiction that is the basis for membership in the bar of this Court) that an attorney has been placed on disciplinary probation but is still allowed to practice, the Clerk will note the status change on the attorney's admission record. An attorney with that status must, in addition to providing the notice to the Clerk required by Civil L.R. 11-7(a)(1), report to the Clerk all significant developments related to the probationary status. Upon receipt by the Court of notification from the State Bar that the attorney's good standing has been restored, the change will be noted on the attorney's admission record.

34

# 11-2. Counsel for the United States

An attorney employed or retained by the United States government or any of its agencies may practice in this Court in all actions or proceedings within the scope of his or her employment or retention by the United States.

# 11-3. Pro Hac Vice

**(a) Application.** An attorney who is not a member of the bar of this Court may apply to appear pro hac vice in a particular action in this district by submitting to the Clerk, together with the written application, a true and correct copy of a certificate of good standing or other similar official document issued by the appropriate authority governing attorney admissions for the relevant bar. Said certificate or other document must be dated no more than one year prior to the date of application for admission. The applicant must also submit an oath certifying the following:

**(1)** That he or she is an active member in good standing of the bar of a United States Court or of the highest court of another State or the District of Columbia, specifying such bar;

**(2)** That he or she agrees to abide by the Standards of Professional Conduct set forth in Civil L.R. 11-4, and to become familiar with the Local Rules and Alternative Dispute Resolution Programs of this Court and, where applicable, with the Bankruptcy Local Rules;

**(3)** That an attorney, identified by name and office address, who is a member of the bar of this Court in good standing and who maintains an office within the State of California, is designated as co-counsel.

**(b) Disqualification from Pro Hac Vice Appearance.** Unless authorized by an Act of Congress or by an order of the assigned judge, an applicant is not eligible for permission to practice pro hac vice if the applicant:

**(1)** Resides in the State of California; or

**(2)** Is regularly engaged in the practice of law in the State of California. This disqualification shall not be applicable if the pro hac vice applicant (i) has been a resident of California for less than one year; (ii) has registered with, and completed all required applications for admission to, the State Bar of California; and

**(3)** Has officially registered to take or is awaiting his or her results from the California State Bar exam.

**(c) Approval.** The Clerk shall present the application to the assigned judge for approval. The assigned judge shall have discretion to accept or reject the application.

**(d) Admission Fee.** Each attorney requesting to be admitted to practice under Civil L.R. 11-3 must pay to the Clerk a fee in an amount to be set by the Court. The assessment will be placed in the Court's Non-Appropriated Fund for library, educational, and other appropriate uses. If the Judge rejects the application, the attorney, upon request, shall have the fee refunded.

**(e) Appearances and Service on Local Co-Counsel.** All papers filed by the attorney must indicate appearance pro hac vice. Service of papers on and communications with local co-counsel designated pursuant to Civil L.R. 11-3(a)(3) shall constitute notice to the party.

# 11-4. Standards of Professional Conduct

**(a) Duties and Responsibilities.** Every member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must:

> **(1)** Be familiar and comply with the standards of professional conduct required of members of the State Bar of California;

> **(2)** Comply with the Local Rules of this Court;

> **(3)** Maintain respect due to courts of justice and judicial officers;

> **(4)** Practice with the honesty, care, and decorum required for the fair and efficient administration of justice;

> **(5)** Discharge his or her obligations to his or her client and the Court; and

> **(6)** Assist those in need of counsel when requested by the Court.

### Commentary

The California Standards of Professional Conduct are contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto.

**(b) Prohibition Against Bias.** The practice of law before this Court must be free from prejudice and bias. Treatment free of bias must be accorded all other attorneys, litigants, judicial officers, jurors and support personnel. Any violation of this policy should be brought to the attention of the Clerk or any Judge for action under Civ. L.R. 11-6.

**(c) Prohibition against Ex Parte Communication.** Except as otherwise provided by law, these Local Rules or otherwise ordered by the Court, an attorney or party to an action must refrain from making telephone calls or writing letters or sending copies of communications between counsel to the assigned Judge or the Judge's law clerks or otherwise communicating with a Judge or the Judge's staff regarding a pending matter, without prior notice to opposing counsel.

### Commentary

This rule is not intended to prohibit communications with a Courtroom Deputy Clerk regarding scheduling.

# 11-5. Withdrawal from Case

**(a) Order Permitting Withdrawal.** Counsel may not withdraw from an action until relieved by order of Court after written notice has been given reasonably in advance to the client and to all other parties who have appeared in the case.

**(b) Conditional Withdrawal.** When withdrawal by an attorney from an action is not accompanied by simultaneous appearance of substitute counsel or agreement of the party to appear pro se, leave to withdraw may be subject to the condition that papers may continue to be served on counsel for forwarding purposes, unless and until the client appears by other counsel or pro se. When this condition is imposed, counsel must notify the party of this condition. Any filed consent by the party to counsel's withdrawal under these circumstances must include acknowledgment of this condition.

**United States District Court**

For the Northern District of California

# 11-6. Discipline

**(a) General.** In the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, in addition to any action authorized by applicable law, the Judge may do any or all of the following:

**(1)** Refer the matter to the Court's Standing Committee on Professional Conduct; or

**(2)** Refer the matter to the Chief District Judge with the recommendation that an order to show cause be issued under Civil L.R. 11-7. If the alleged unprofessional conduct arises in the Bankruptcy Court the Judge shall first refer the matter to the Chief Bankruptcy Judge, who may in turn refer it to the Chief District Judge.

**(b) "Attorney" Defined.** For purposes of Civil L.R. 11-6, the term "attorney" may include law corporations and partnerships, when the alleged conduct occurs in the course and scope of employment by the corporation or partnership, and includes any attorney admitted to practice in this Court pro hac vice pursuant to Civil L.R. 11-3.

**(c) Standing Committee on Professional Conduct.** The Court will appoint, as special counsel for disciplinary proceedings pending before the Court, a Standing Committee on Professional Conduct consisting of a minimum of 7 and a maximum of 11 members, depending on the number of disciplinary matters referred to or active before the committee, and the Chief District Judge will designate one of the members to serve as Chair. All members of the Standing Committee must be members in good standing of the bar who practice regularly in this court. Members shall serve staggered terms in 2 approximately equal groups, such that the members of one group are replaced or reappointed every 2 years. The Standing Committee may organize itself and conduct its affairs by subcommittees of one or more members as it deems advisable. All final actions of the Standing Committee require a majority vote. The Standing Committee will submit a confidential report of its activities semi-annually or more often to the Clerk, the Chief District Judge, the Clerk of the Bankruptcy Court and Chief Bankruptcy Judge and the Discipline Oversight Liaison Judge.

**(d) Discipline Oversight Liaison Judge.** The Chief District Judge shall appoint a District Judge to oversee the administration of this Local Rule and to serve as liaison to the Standing Committee.

**(e) Matters Referred To The Standing Committee.** Any Judge may initiate a referral to the Standing Committee on Professional Conduct to investigate a charge or information that a member of the bar of this Court, an attorney appearing pro hac vice or an attorney employed or retained by the United States (see Civil L.R. 11-2) has engaged in unprofessional conduct in the practice of law before this Court. The Alternative Dispute Resolution Magistrate Judge may initiate a referral based upon information provided by, and at the request of, the Alternative Dispute Resolution Department. To initiate a referral to the Standing Committee on Professional Conduct, a Judge may either enter an order in the case directing the Clerk to refer the matter to the Standing Committee or submit to the Clerk of Court a written referral addressed to the Standing Committee. Upon receipt of either an order or a referral, the Clerk will open a new miscellaneous case under seal, file the original order or referral and any accompanying exhibits thereto, and transmit a copy to the members of the Standing Committee and, in the case of a referral from the Bankruptcy Court, the Chief Bankruptcy Judge. Unless otherwise directed by the Court, the Standing Committee shall investigate the alleged or suspected unprofessional conduct in accordance with the following procedures:

**(1)** Investigations shall be conducted formally or informally as the Standing Committee deems appropriate to the circumstances of the case. Investigations shall be confidential unless the Discipline Oversight Liaison Judge, upon application by the Standing Committee or the attorney who is subject to the investigation, determines

that there is a compelling reason to make the matter public.

**(2)** At the written request of the Standing Committee, the Chief District Judge (or in a matter referred by the Chief District Judge, the General Duty Judge) may direct the issuance of subpoenas and subpoenas duces tecum.

**(3)** At the conclusion of its investigation, the Standing Committee may, if it deems appropriate, finally resolve any referred matter informally or by consent; if the attorney who was the subject of the investigation has admitted unprofessional conduct, however, the Standing Committee should obtain a written consent specifying a remedial plan. The Standing Committee shall prepare a report summarizing its proceedings, its findings, any informal or stipulated resolution and its recommendation, if any, to the Court. If the Standing Committee's determination is to file a petition for formal discipline, it shall so state in the final report. The Standing Committee shall present to the Clerk for filing the original of its final report and a chambers copy for the referring Judge. Documents presented for filing in a sealed file under this rule shall be presented in the same manner as documents presented for filing under Civil L.R. 79-5(a) and shall be marked "CONFIDENTIAL: ATTORNEY DISCIPLINE MATTER. FILE UNDER SEAL." The Clerk shall file the original in the sealed file and direct the chambers copy to the referring Judge. Unless the final report of the Standing Committee recommends that the file remain open, the Clerk shall close the miscellaneous matter upon filing the final report and provide notice to the attorney under investigation and all persons who were given notice of the referral in the first instance. A case file in an attorney discipline matter that contains a report of the Standing Committee shall be maintained at the courthouse for a minimum of 5 years so as to be available for reference in the event of future discipline proceedings involving the same attorney.

**(4)** If a majority of the members determine that public reprimand, suspension, disbarment, monetary sanctions or other formal discipline is warranted, and the respondent attorney does not consent, the Standing Committee shall institute a disciplinary proceeding by filing with the Clerk a sealed petition that specifies the alleged misconduct. Upon the filing of the petition, the Clerk shall assign a new civil case number to the matter and shall randomly assign it to a District Judge other than the referring Judge or the Discipline Oversight Liaison Judge in the same manner as any other sealed civil action or proceeding. Unless otherwise directed by the assigned Judge, the proceeding shall then be presented by one or more members of the Standing Committee. For a matter arising in the Bankruptcy Court of this District, the assigned Judge may, sua sponte or upon motion by the respondent attorney, refer the matter to the Clerk of the Bankruptcy Court for assignment to a Bankruptcy Judge other than the referring Judge for hearing and a report and recommendation.

**(5)** The Judge to whom the proceeding is assigned shall issue an order to show cause setting a date for hearing, addressed to the respondent attorney, requiring the attorney to appear and show cause why he or she should not be disciplined as prayed for in the petition. The order shall direct that a copy thereof, together with a copy of the petition, be served on the respondent in a manner permitted by Fed. R. Civ. P. 5(b) not less than 35 days in advance of the date specified for hearing. Any response must be filed no more than 14 days later. In the event the matter cannot be resolved solely based on the petition, the response and the hearing thereon, the Judge may order such additional proceedings as the circumstances of the particular case may warrant. Written findings of fact and an order based thereon shall be filed by the Judge when dismissing the proceeding or when imposing discipline. The entire case shall be maintained under seal and court proceedings shall be closed to the public unless the subject attorney voluntarily waives these requirements in writing; documents shall be presented for filing in the manner specified in subparagraph (e)(3) of this Rule,

except that the Judge's final order, if imposing discipline, together with portions of the file deemed by the Judge to be appropriate for public disclosure, may be made accessible to the public via the Court's website and any other means ordered by the Judge. Upon motion by the respondent attorney, publication of the order imposing discipline may be stayed pending appeal, if an appeal of the discipline order is taken. An order imposing discipline under this Rule may be appealed to the Court of Appeals.

**(6)** Records other than court files, such as the confidential reports of the Standing Committee, shall be maintained as directed by the Discipline Oversight Liaison Judge.

**(7)** After an order imposing discipline is filed, the Standing Committee shall provide the Clerk with a list of other courts before which the Standing Committee knows the respondent attorney to have been admitted to practice. The list shall be compiled from information obtained in the course of the Standing Committee's work on the case and shall not require a separate investigation. The Clerk shall give prompt notice of the order of discipline to the disciplinary body of each such court.

**(f) Costs.** Any discipline or other resolution imposed under this Local Rule, including sanctions and punishment as provided for by Civil L.R. 11-8, may include an order that the respondent attorney pay costs of prosecution, including out-of-pocket expenses of the presenting attorney. Out-of-pocket expenses necessarily incurred by the Standing Committee in carrying out its responsibilities under these rules, if presented for reimbursement within 90 days of the conclusion of the proceeding and not taxed against the respondent attorney, will be paid by the Court.

# 11-7. Reciprocal Discipline and Discipline Following Felony Conviction

**(a) Required Notice of Change in Status.** Any attorney admitted to practice in this Court or any attorney appearing pro hac vice who is convicted of a felony, suspended, disbarred or placed on disciplinary probation by any court, or who resigns from the bar of any court with an investigation into allegations of unprofessional conduct pending, must give notice to the Clerk and the Clerk of the Bankruptcy Court in writing within 14 days of such event.

**(b) Order to Show Cause.** Unless referred to the Standing Committee on Professional Conduct, matters subject to reciprocal discipline on the grounds listed in paragraph (a) above shall be handled as follows:

**(1)** Whenever a member of the bar of this Court or any attorney appearing pro hac vice who is convicted of a felony, disbarred, suspended for reasons other than those noted in Civil L.R. 11-1(g) or who resigns from the bar of any court with an investigation into allegations of unprofessional conduct pending, the Chief District Judge will enter an order suspending that member on an interim basis from practice before this Court and affording the member an opportunity to show cause, within 28 days, why a suspension or disbarment order should not be entered. If the attorney files a response stating that imposition of an order of suspension or disbarment from this Court is not contested, or if the attorney does not respond to the Order to Show Cause within the time specified, then the Court shall enter an order of suspension or disbarment.

**(2)** An attorney who wishes to contest reciprocal discipline must file with the Court a timely response to the order to show cause. The Chief District Judge

may then act on the matter, order it randomly assigned to another Judge or refer it to the Standing Committee on Professional Conduct for report and recommendation. The response to the Order to Show Cause must set forth facts establishing one or more of the following: (a) the procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (b) there was such an infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court should not accept as final the other jurisdiction's conclusion(s) on that subject; (c) imposition of like discipline would result in a grave injustice; or (d) other substantial reasons exist so as to justify not accepting the other jurisdiction's conclusion(s). In addition, together with the response to the Order to Show Cause, the attorney must lodge with the Court a certified copy of the entire record from the other jurisdiction or bear the burden of persuading the Court that less than the entire record will suffice. This procedure may not be used to relitigate a felony conviction.

**(3)** An attorney disbarred, suspended or placed on disciplinary probation under the reciprocal discipline provisions of this rule may seek reinstatement upon completion of the period of suspension, disbarment or disciplinary probation by filing a petition for admission with the Clerk as provided in Civil L.R. 11-1(c) and paying the admission fee in accordance with 11-1(d). An attorney disbarred by reason of a felony conviction may not petition for reinstatement until at least one year after entry of the disbarment order.

**Cross Reference**

See Fed. R. Civ. P. 11(c), 16(f), 37.

# 11-8. Sanctions for Unauthorized Practice

A person who exercises, or pretends to be entitled to exercise, any of the privileges of membership in the bar of this Court, when that person is not entitled to exercise such privileges, may be referred to the Standing Committee in addition to any action authorized by applicable law.

# 11-9. Student Practice

**(a) Permission to Appear.** With the approval of the assigned Judge, a certified law student who complies with these Local Rules and acts under the supervision of a member of the bar of this Court may engage in the permitted activities set forth in this Local Rule.

**(b) Permitted Activities.** With respect to a matter pending before this Court, a certified law student may:

**(1)** Negotiate for and on behalf of the client or appear at Alternative Dispute Resolution (ADR) proceedings, provided that the activity is conducted under the general supervision of a supervising attorney;

**(2)** Appear on behalf of a client in the trial of a misdemeanor or petty offense, provided the appearance is under the general supervision of a supervising attorney who is immediately available to attend the proceeding if the Judge decides to require the presence of the supervising attorney and, if the client is a criminal defendant, the client has filed a consent with the Court; and

**(3)** Appear on behalf of a client in any other proceeding or public trial, provided the appearance is under the direct and immediate supervision of a

United States District Court
For the Northern District of California

40

supervising attorney, who is present during the proceedings.

**(c) Requirements for Eligibility.** To be eligible to engage in the permitted activities, a law student must submit to the Clerk:

**(1)** An application for certification on a form established for that purpose by the Court. The Clerk is authorized to issue a certificate of eligibility;

**(2)** A copy of a Notice of Student Certification or Recertification from the State Bar of California, or a certificate from the registrar or dean of a law school accredited by the American Bar Association or the State Bar of California that the law student has completed at least one-third of the graduation requirements and is continuing study at the law school, (or, if a recent graduate of the law school, that the applicant has registered to take or is awaiting results of the California State Bar Examination). The certification may be withdrawn at any time by the registrar or dean by providing notice to that effect to the Court; and

**(3)** Certification from a member of the bar of this Court that he or she will serve as a supervising attorney for the law student. The certification may be withdrawn at any time by a supervising attorney by providing notice to that effect to the Court.

**(d) Requirements of Supervising Attorney.** A supervising attorney must:

**(1)** Be admitted or otherwise permitted to practice before this Court;

**(2)** Sign all documents to be filed by the student with the Court;

**(3)** Assume professional responsibility for the student's work in matters before the Court; and

**(4)** Assist and counsel the student in the preparation of the student's work in matters before the Court.

**(e) Termination of Privilege**. The privilege of a law student to appear before this Court under this rule may be terminated by the Court at any time in the discretion of the Court, without the necessity to show cause.